UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

                                                          Case No. 15-cr-20442-2
                                                          District Judge Paul D. Borman

MYRON LAMARR DUNCAN-PLUNKETT,

    Defendant.
_____/

**ORDER DENYING MOTION TO REDUCE SENTENCE PURSUANT TO
18 U.S.C. § 3582(c)(1)(A) (ECF NO. 297, PAGE ID 2889)**

On July 12, 2020, Defendant filed a Motion to Reduce Sentence. (ECF No. 297.) Defendant contends that the "Bureau of Prisons has been woefully ineffective in controlling the spread of COVID-19. Defendant further contends that he is a survivor of Neuroblastoma Cancer and a Lymphadenectomy, both of which have compromised his immune system rendering him unusually susceptible to hospitalization and death if he contracts COVID-19." (*Id.* at Page ID 2893.) Defendant "is 28 years old and currently serving two concurrent sentences of 120 months and 15 months, respectively, for drug trafficking.[1] The instant conviction involves a five-year mandatory minimum sentence. In Defendant's Rule 11 Plea

---

[1] The case resulting in the 15-month concurrent sentence was before Judge Avern Cohn.

Agreement, the parties stipulated to a sentence of at least 120 months. (Presentence Report, p. 21, ¶ 80.)

Defendant reported to prison on June 1, 2018. He is incarcerated at a minimum-security satellite prison camp adjacent to McKean FCI in Bradford, Pennsylvania." (*Id*. at Page ID 2895.) His projected release date is January 12, 2027.

The Court notes that as of September 2, 2020, FCI-McKean has no positive results for COVID-19, and has had 153 inmates tested. (Per BOP Regional Supervisor in St. Louis, MO.)

Defendant alleges that when he was two years old in 1993, he was diagnosed with Stage III Pelvic Neuroblastoma. He underwent surgery, and gross total resection sacrificing his sciatic nerve. The surgery also included a lymphadenectomy of lymph node dissection--surgical removal of one or more groups of lymph nodes. Defendant asserts that this has compromised his immune system. Over the next year (age three) he received rounds of chemotherapy. (*Id*. at Page ID 2896). Defendant states that he has shown no clinical evidence of tumor recurrence since that time, and has yearly check-ups. He walks with a limp, but no longer wears a brace. (*Id*. at Page ID 2896-97.) Defendant also contends that he requires a yearly echocardiogram to assess his left ventricular function.

Defendant contends that the BOP cannot control the outbreak of COVID-19.

Defendant posits that he has an appropriate release plan: living at his Uncle Maurice Duncan's house. (*Id*. at Page ID 2907.)

Defendant contends that his circumstances meet the test for "Extraordinary and Compelling Reasons" under United States Sentencing Commission Guideline § 1B1.13(1)(A), cmt. App. Note 1(A)(ii)(I).

Defendant states that while his criminal history reflects drug trafficking, he has no convictions for violent conduct.

The Court finds that Defendant's request to his warden on May 18, 2020, and the warden's denial on May 22, 2020, satisfy the exhaustion requirement in 18 U.S.C. § 3582(c)(1)(A). Accordingly, this case is properly before this Court. (ECF No. 297-1, Page ID 2919).

The Government filed a Response in Opposition on July 31, 2020 (ECF No. 305), pointing out that Defendant has two federal drug trafficking convictions, and that in this case, he kept a loaded SKS assault rifle with a high capacity magazine in the closet next to the entrance of the drug house, which was rented in his name. (PSR, p. 7, ¶ 17.)

The Government notes that Defendant's Motion concentrates on the COVID-19 rates in the BOP, and his history of cancer as a child. (Government Response, ECF No. 305, Page ID 3076.) The Government contends that his childhood illness

3

has been in remission for approximately 20 years, and that he doesn't sufficiently explain how that now makes him immunocompromised and more susceptible to the severe effects of COVID-19. (*Id.* at Page ID 3076.)

The Government concludes that even if Defendant is immunocompromised because of his childhood medical treatments, he is foreclosed from relief under the strictures contained in 18 U.S.C. § 3582(c)(1)(A): the Court's required consideration of 18 U.S.C. § 3553(a) factors, and the Court's required application of the policy statements issued by the United States Sentencing Commission in U.S.S.G. § 1B1.13. Both of these provisions prevent release if the Defendant remains a danger to the community.

The Government concludes that Defendant is foreclosed from relief under 18 U.S.C. § 3582(c)(1)(A) because he remains a danger to the community, and thus the Court must deny his petition after its required statutory consideration of 18 U.S.C. § 3553(a) factors and its application of the policy statements issues by the Sentencing Commission in U.S.S.G. § 1B1.13.

Defendant filed a reply on August 7, 2020 (ECF No. 311) contending that medical studies indicate "that patients with cancer, or in remission, have higher death risks from COVID-19." (*Id.* at Page ID 3424.) Defendant further contends that "the absence of infections at FCI-McKean are largely meaningless," because

4

of scant testing inside prisons except for people who self-report symptoms. (*Id.* at Page ID 3426.)

Defendant's BOP medical records note that in September 2018, he "rolled my [left] foot while playing basketball." (ECF No. 306-1, Page ID 3105.) And in July 2020, Defendant complained of a sports injury to his right foot. (ECF No. 306-1, Page ID 3167.)

## DISCUSSION

Defendant's instant conviction arose from his involvement with an apartment/drug house that he leased, and that he and his co-conspirators used as a secure location to receive and distribute multiple loads of kilogram quantities of cocaine.

<u>Required discussion of applicable § 3553(a) factors, per 18 U.S.C. § 3582(c)(1)(A)</u>

> (1) The nature and circumstances of this offense are very serious: Large quantity cocaine trafficking and distribution from a drug house that contained a loaded high-powered SKS rifle and a large-capacity magazine in the entryway closet. A search warrant execution at the apartment resulted in the seizure of heroin, crack cocaine, and over $35,000 in a nightstand drawer containing Defendant's passport.
>
> His criminal history includes two 2012 convictions for delivery of heroin. Within two years of being discharged from probation, he was arrested on the instant case.
>
> (2)(A)(B) and (C) There is a need for his sentence to reflect the seriousness of these convictions, and to promote respect for the law, afford adequate

5

> deterrence to criminal conduct, and protect the public from Defendant's commission of further crimes.

Defendant has completed only two years of his 10-year sentence. This Court notes that a recent Sixth Circuit opinion, *United States v. Kinkaid*, 805 F. App'x 394-396 (6th Cir. 2020) approves of the Court's consideration of the percentage of time served in its required discussion of the § 3553(a) factors:

> As the district court explained, it considered "the length of time served only as a barometer to measure whether granting Defendant early release would" advance the "relevant § 3553(a) factors, which the statute directs the Court to consider 'to the extent they are applicable.'" So the District Court did not use the percentage of time served to make any hard-and-fast rules about when early release is appropriate. Instead, it appropriately considered whether release would serve § 3553(a)'s purposes given the minimal amount of time that Kinkaid served.
>
> Nor was the District Court's focus on the amount of time served misplaced. District courts routinely weigh whether a certain amount of time is "sufficient, but not greater than necessary," to serve § 3553(a)'s purposes. That's what happens at sentencing. A district court may use that same calculus when deciding whether to grant a motion for compassionate release.

(Internal record citation omitted).

<u>Required consideration of applicable policy statements issued by the Sentencing Commission under 18 U.S.C. § 3582(c)(1)(A), to wit, U.S.S.G. § 1B1.13 (Reduction in Term of Imprisonment Under 18 U.S.C. § 3582(c)(1)(A) (Policy Statement))</u>

This U.S.S.G. Policy Statement requires the Court to initially consider the factors set forth in § 3553(a), and only then proceed to determine whether:

(1)(A)  Extraordinary and compelling reasons warrant the reduction, [and]

(2)  Determine whether defendant is a danger to the safety of any other person or the community, as provided in 18 U.S.C. § 3142(g) [of the Bail Reform Act: Factors to be considered in determining whether there are conditions of release that will reasonably assure the safety of any other person and the community]; and

(3)  The reduction is consistent with this policy statement.

Thus, while the Commentary to U.S.S.G. § 1B1.13, App. Note 1(A)(ii) provides for consideration of "Extraordinary and Compelling Reasons," it contains this precondition: "provided the defendant meets the requirements of subdivision 2" in the Policy Statement, which requires the Court to have determined that the Defendant is not a danger to the community.

## CONCLUSION

The Court concludes that this Defendant does not qualify for compassionate release, because if released he would be a danger to the community. The Court can only consider the issue of Extraordinary and Compelling Reasons contained in U.S.S.G. § 1B1.13 cmt. App. Note 1, "provided the defendant meets the requirements of subdivision (2)" to § 1B1.13:  (2) the Defendant is not a danger to

the community as provided in 18 U.S.C. § 3142(g). The Court further finds as discussed *supra* at pp. 5-6, that application of the 3553(a) factors do not support release.

The Court reiterates: After considering the strictures contained in 18 U.S.C. § 3582(c)(1)(A), which requires consideration of the 3553(a) factors, and after consideration of U.S.S.G. § 1B1.13(2), which incorporates consideration of both 18 U.S.C. § 3553(a) and 18 U.S.C. § 3142(g), the Court concludes that the Defendant would be a danger to the community if released.

Even if the Court were to proceed with further analysis under § 1B1.13, the Court would not find Extraordinary and Compelling Reasons to support Defendant's release. Defendant is not presently suffering from a serious medical condition that substantially diminishes his ability to provide self-care, and from which he is not expected to recover. His childhood medical issues, which are being monitored, do not support compassionate release. Defendant's continuing treatment in the BOP for sprains from playing basketball in 2019 and 2020 indicate that he is not eligible for medical release consideration under U.S.S.G. § 1B1.13, cmt. App. Note 1(A).

The Court notes that a recent Sixth Circuit opinion pointed out that "the BOP has in fact put in place and updated its protocols to address the novel risks from COVID-19," *Wilson v. Williams*, 961 F.3d 829, 844 (6th Cir. 2020). Finally,

the Court notes that at present no inmates at FCI-McKean have tested positive for COVID-19.

Accordingly, the Court denies Defendants Motion for Compassionate Release.

SO ORDERED.

DATED:  September 3, 2020     s/Paul D. Borman
                              PAUL D. BORMAN
                              UNITED STATES DISTRICT JUDGE